# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| JEFFERSON PARISH SCHOOL BOARD, | : |
| | : Civil Action No. 22-cv-02916 |
| Plaintiffs, | : |
| | : Judge: Carl Barbier |
| v. | : |
| | : Magistrate: Janis Van Meerveld |
| INDIAN HARBOR INSURANCE COMPANY, | : |
| QBE SPECIALTY INSURANCE COMPANY, | : Section: J (1) |
| STEADFAST INSURANCE COMPANY, | : |
| GENERAL SECURITY INDEMNITY | : |
| COMPANY OF ARIZONA, UNITED | : |
| SPECIALTY INSURANCE COMPANY, | : |
| LEXINGTON INSURANCE COMPANY, OLD | : |
| REPUBLIC UNION INSURANCE COMPANY, | : |
| GEOVERA SPECIALTY INSURANCE | : |
| COMPANY, TRANSVERSE SPECIALTY | : |
| INSURANCE COMPANY, NATIONAL FIRE & | : |
| MARINE INSURANCE COMPANY, ARCH | : |
| SPECIALTY INSURANCE COMPANY, | : |
| LANDMARK AMERICAN INSURANCE | : |
| COMPANY, EVEREST INDEMNITY | : |
| INSURANCE COMPANY, FIRST SPECIALTY | : |
| INSURANCE CORPORATION, GREAT | : |
| AMERICAN INSURANCE COMPANY, | : |
| MITSUI SUMITOMO INSURANCE COMPANY | : |
| OF AMERICA, INTERSTATE FIRE AND | : |
| CASUALTY INSURANCE COMPANY, | : |
| INDEPENDENT SPECIALTY INSURANCE | : |
| COMPANY, and GUARANTEE | : |
| RESTORATION SERVICES, L.L.C., | : |
| | : |
| Defendants. | : |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY ARBITRATION AND THE CHOICE OF AN ARBITRATOR

## INTRODUCTION

Defendant Swiss Re Corporate Solutions Capacity Insurance Corporation, formerly known as First Specialty Insurance Corporation ("Swiss Re") respectfully submits this opposition to Plaintiff's motion to stay arbitration and the choice of an arbitrator ("Motion to Stay"). Plaintiff also filed a motion for an expedited hearing on the Motion to Stay ("Motion to Expedite").

Plaintiff's Motion to Stay fails for several reasons. As an initial matter, Plaintiff misled the Court when it asserted that an expedited hearing was necessary because "some type of pleading may be due in the New York State Court." In fact, a responsive pleading was not due in first-filed New York until September 21, 2022. What is more, Plaintiff asked for, and was given, an extension of time to name its arbitrator until November 2, 2022. Plaintiff deliberately chose not to ask for more time to serve a responsive pleading in New York to create an emergency. Had Plaintiff, Swiss Re would have granted the extension as would have the New York Court. Further, Plaintiff already filed its response and requested relief in the New York action. Nothing is due from it in New York. Plaintiff's excuse for an expedited hearing is thus completely manufactured for the purposes of a litigation advantage to have this second-filed action accelerate in front of the more comprehensive and first filed-action, properly venued in New York. Plaintiff's tactic has worked in that Swiss Re was required to provide this substantive response to Plaintiff's Motion to Stay on only 24 hours' notice.

Second, Plaintiff's moved to remand on August 30, 2022 ("Motion to Remand") with a submission date of November 2, 2022. In the Motion to Remand, Plaintiff contends that this Court does not have jurisdiction over this dispute and that, therefore, remand is proper. Yet in the Motions to Expedite and to Stay Plaintiff acts this court for affirmative relief. Plaintiff cannot

have it both ways. Swiss Re respectfully submits that the Court may not consider the Motion to Stay until it first confirms that it has jurisdiction, which is of course a fundamental issue in the Fifth Circuit.

Third, this Court, respectfully, may not issue an order staying the New York Court as Plaintiff requests. As a threshold matter, this Court cannot grant Plaintiff's requested relief because a federal court cannot grant an injunction to stay proceedings in a state court, which is exactly what Plaintiff asks this Court to do. *See* U.S.C. § 2283. Plaintiff's Motion to Stay should also be denied because the action before the New York Court is first filed, is more comprehensive in that it contains all the necessary parties (unlike this action wherein Plaintiff has chosen to leave out the applicable foreign insurers), is filed pursuant to the perfectly valid New York "exclusive jurisdiction" clause, and it the only venue that can provide the most complete relief for all of the necessary parties. The New York Action was filed on August 18, 2022, and the captioned Louisiana Action was filed thereafter. Both actions relate to and arise out of Plaintiff's claim for coverage for damage to its properties from Hurricane Ida. Both actions assert and arise out of the very same facts regarding the insurers' initial payment and alleged breach of contract by failing to pay Plaintiff's $45 million demand. But the New York Action was filed first and has *all* the necessary parties, including *all* the foreign insurers against whom Plaintiff also asserts claims. Plaintiff's later-filed action here is a subset of and entirely encompassed in the claims pending in the New York action.

Fourth, Plaintiff is wrong that the arbitration clause it agreed to is void and unenforceable. La. R.S. § 22:868. Section 868 of the Louisiana Insurance Code only applies to insurance contracts delivered or issued for delivery in Louisiana. *See* La. R.S. § 22:868(A). Plaintiff has not demonstrated that the insurance contract at issue here was delivered or issued

for delivery in Louisiana. While Plaintiffs' address on the insurance contract is in Louisiana, the broker – Maximum Independent Brokerage, LLC – is in Illinois. In addition, Section 868 expressly does not apply to surplus lines insurance contracts. *See* La. R.S. § 22:868(D) ("The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance."). Plaintiff admits that the Swiss Re insurance contract is a surplus lines contract not subject to approval by the Department of Insurance. *See* Memorandum in Support of Motion to Stay, ECF No. 10-1 at 7 ("The policies were 'delivered as surplus lines coverage under the Louisiana Insurance Code of the State of Louisiana.'"). Surplus lines insurers are not required to file or seek approval of their forms. *See* La. R.S. § 22:446(A) ("The commissioner shall not require surplus lines insurers to file or seek approval of their forms and rates for property and casualty insurance except as provided in R.S. 22:1456(B)(2) relative to public carrier vehicles."). Last, although all the above is more than enough, Section 868 does not apply to any insurance contract with a premium over $200,000. Here, the premium of $303,438 far exceeds that limit.

Finally, Plaintiff's efforts to evade the New York Convention by not naming the foreign insurers in this suit is of no avail. Pursuant to the recent decision from Chief Judge Brown in *Kronlage Fam. LP v. Indep. Specialty Ins. Co.*, No. CV 22-1013, 2022 WL 3444011 (E.D. La. Aug. 17, 2022), wherein Her Honor analyzed an *identical* arbitration provision as found in the insurance contracts at issue in this case, removal is entirely proper. As Her Honor held, the arbitration agreement falls under the New York Convention and the dispute related to the insurance contracts containing the arbitration agreement. *Id.* at *5-6. The Court also rejected the contention that the arbitration agreement was void under Section 868 of the Louisiana Insurance Code. The Court held that the New York Convention preempts state law and denied the

policyholder's motion to invalidate the arbitration provision. *Id.* at \*6 (citing *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431-32 (5th Cir. 2019), *as revised* (June 6, 2019)).

As a result, Plaintiff's Motion to Stay should be denied.

## <u>ARGUMENT</u>

**I.     Plaintiff Misled The Court When It Asserted That An Expedited Hearing Was Necessary Because A Pleading Was Due In New York, When, In Fact, The Parties Mutually Agreed To Several Extensions Of Time With Respect To The Time To Oppose The Motion To Remand And The Time To Name A Party Arbitrator.**

On August 18, 2022, Swiss Re filed in New York State Court the first-filed and more comprehensive action entitled *Swiss Re Corporate Solutions Capacity Insurance Corporation f/k/a First Specialty Insurance Corporation v. Jefferson Parish School Board, et al.*, Index Number 652985/2022 ("New York Action"). All 20 insurers who Plaintiff has made claims against for this loss were named in that action. On August 18, 19, and 26, 2022, all those insurer defendants filed responses and they have cross-claimed against Jefferson Parish for full relief.

On August 24, 2022, Plaintiff filed suit in the 24th Judicial District Court for the Parish of Jefferson the second-filed and less comprehensive action entitled *Jefferson Parish School Board v. Indian Harbor Insurance Company, et al.*, No. 831-966, Division L ("Louisiana State Action"). Plaintiff chose to name only 15 of the 20 insurers involved in its claim leaving out all of its foreign insurers. On August 25, 2022, Swiss Re removed the Louisiana State Action to this Court. *See* ECF No. 1.

Plaintiff deliberately did not sue any of the non-U.S. insurers subscribing to the insurance contracts at issue for this claim in an effort to avoid the New York Convention. Plaintiff's plan to pretend those foreign insurers are not parties to the insurance contracts at issue here does not

make it so. All insurers subscribing to the insurance contracts at issue here are parties in the New York Action. Further, Plaintiff agreed with its insurers to the arbitration clause, contained in the insurance contracts at issue. It states:

> C. ARBITRATION CLAUSE. All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. …
>
> The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance. …

ECF No. 10-4 at 10.

On August 30, 2022, Plaintiff filed its Motion to Remand, contending that this Court did not have jurisdiction over this dispute. ECF No. 5. On September 1, 2022, counsel for Swiss Re requested an additional 30-day extension on the submission date for the Motion to Remand. Ex. A. That same day, counsel for Plaintiff stated that he did not think it would be a problem and asked for an extension of time for Plaintiff to respond to the requests for arbitration served by Swiss Re and the other insurers. *Id.* The next day, counsel for Swiss Re proposed that the extensions match so that the submission date for the Motion to Remand fell on the same day as Plaintiff's deadline to appoint its arbitrator. *Id.* Counsel for Swiss Re proposed November 2, 2022. *Id.* Shortly thereafter, counsel for Plaintiff confirmed the parties had reached an agreement. *Id.* Thus, Swiss Re readily agreed with the requested extension and Plaintiff was not required to appoint an arbitrator until November 2, 2022.

The New York Action was served on Plaintiff on August 22, 2022.[1] Under the New York Civil Practice Law and Rules Section 320, Plaintiff had 30 days to serve a responsive pleading, or September 21, 2022. Plaintiff asked for more time to appoint an arbitrator, and Swiss Re agreed. But apparently in an attempt to create an emergency that did not exist, Plaintiff did not request time to serve a responsive pleading in New York. Of course, that would have similarly, readily been granted.

Instead, Plaintiff misled the Court when it asserted that an expedited hearing was necessary because "some type of pleading may be due in the New York State Court." In fact, a responsive pleading was not due in New York until September 21, 2022. What is more, well before a responsive pleading was due – and on the same day that Plaintiff filed its Motion to Expedite – Plaintiff filed a motion to dismiss in New York. A motion to dismiss filed in lieu of an answer in New York stays any requirement to file a responsive pleading until ten days after notice of entry of the order on the motion to dismiss. *See* N.Y. CPLR § 3211(f).

Plaintiff's excuse for an expedited hearing was thus manufactured. There was simply no urgency and no need for expedited relief. And because of that misrepresentation, Swiss Re was not given an opportunity to oppose Plaintiff's Motion to Expedite or fair time to respond to the Motion to Stay. Instead, Swiss Re had no choice but to rush and file this substantive response to Plaintiff's Motion to Stay on only 24 hours' notice. Plaintiff misled this Court and severely prejudiced Swiss Re in an effort to accelerate this case in front of the more comprehensive, prior-pending action in New York.

---

[1] If, as Plaintiff claims, Plaintiff was not served with the New York Action until August 30, 2022, Plaintiff's representation to this Court that a responsive pleading was imminently due in New York are even more exaggerated as in that case a responsive pleading would not be due until September 29, 2022 – 20 days after the Motion to Expedite was filed.

II.     **The Court Cannot Address The Substantive Motion To Stay The Arbitration, Stay The Choice Of An Arbitrator, And Stay The New York Action Until It First Resolves The Challenge To The Court's Jurisdiction Brought By Plaintiff.**

On August 30, 2022, Plaintiff filed its Motion to Remand. ECF No. 5. Plaintiff asserts that this Court has no jurisdiction over this dispute and must remand the case back to Louisiana State Court. *Id.* Plaintiff contends that removal was improper under 9 U.S.C. § 205 and that there is no federal question to consider. *Id.* at 3-4. Plaintiff also maintains that removal was improper because diversity jurisdiction is not satisfied. *Id.* at 6. Plaintiff alleges that "diversity jurisdiction does not exist," and requests the Court remand the case. *Id.* at 10.

The issue of federal subject matter jurisdiction "concerns the fundamental constitutional question of the allocation of judicial power between the federal and state governments." 13 Wright & Miller § 3522, p. 125. A court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit (subject-matter jurisdiction) …." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). The Supreme Court has only recognized two "threshold grounds" on which a court can resolve a case without first addressing subject matter jurisdiction: (1) personal jurisdiction and (2) *forum non conveniens*. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999). Neither ground is at issue here.

Of course, federal courts are courts of limited jurisdiction. As such, the Court must first determine whether it has subject matter jurisdiction over this matter before granting any relief especially the drastic relief sought in the Motion to Stay. *See Mire v. Bd. of Supervisors of Louisiana State Univ.*, No. CV 15-6965, 2017 WL 785439, at *2 (E.D. La. Mar. 1, 2017) ("Before the Court may determine whether Desselle and Sorenson are proper defendants under

*Ex parte Young*, it must first determine whether it has subject matter jurisdiction over this case.") (citing *In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times.")); *Broome v. U.S. Army Corps of Engineers*, No. CIV.A. 14-2413, 2015 WL 4875870, at *2 (E.D. La. Aug. 12, 2015) ("The Court therefore must first determine whether it has subject matter jurisdiction over Plaintiff's claims ….") (Barbier, J) (declining to consider motion on the merits because the Court concluded that it lacked subject matter jurisdiction); *Banks v. HIAB USA, Inc.*, No. 15-263, 2017 WL 1128449, at *1 (M.D. La. Mar. 24, 2017) ("Because federal courts are courts of limited jurisdiction, the Court is required to inquire into the potential jurisdictional defect and must first determine whether it has subject-matter jurisdiction over this action before turning to [defendant's] motion for summary judgment and motion for sanctions.").

Furthermore, the Fifth Circuit has made clear that a decision regarding the validity of an arbitration agreement is a merits inquiry not appropriate for a determination of jurisdiction. *See Beiser v. Weyler*, 284 F.3d 665, 672, 674 (5th Cir. 2022) ("[C]onflating jurisdiction and the merits would deprive defendants of an opportunity to appeal in a significant class of cases in which the district court concludes that the arbitration clause under the Convention does not in fact provide a defense," and "[o]ur precedents and those of the Supreme Court require us to hold that a decision about whether the [arbitration] clauses bind Beiser personally is a decision on the merits, entitled to issue preclusion and subject to appellate review.").

Thus, the Court cannot consider Plaintiff's Motion to Stay until it first rules on Plaintiff's Motion to Remand challenging the jurisdiction of this Court. The parties agreed for the hearing on Plaintiff's Motion to Remand to be scheduled on November 2, 2022, so again, there is no need whatsoever for Plaintiff's expedited Motion.

**III.     Plaintiff's Motion To Stay Should Be Decided By The New York Court – Not This Court – Based On The Clear And Unambiguous Arbitration And Applicable Law; Court Jurisdiction Clauses**

Plaintiff's Motion should be denied because this Court is not the appropriate venue to decide whether arbitration should be stayed based on the clear terms of the arbitration, law and forum clauses in favor of New York. Rather, the New York Court, where this dispute is first filed, is more comprehensive, and issue has been joined should decide the issue.

Plaintiff does not – and cannot – dispute that the arbitration clause in the Swiss Re insurance contract plainly states as follows:

> ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as the "parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. …
>
> The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of the New York as the proper law of this insurance. ECF No. 10-4 at 10.

What is more, the <u>Applicable Law; Court Jurisdiction</u> clause also provides as follows:

> The laws of the State of New York, without regard to any conflict or laws rules that would cause the application of the laws of any other jurisdiction, shall govern the construction, effect, and interpretation of this insurance agreement.
>
> The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

Simply stated, whether this matter proceeds via arbitration or lawsuit, the one consistent requirement is that New York law and forum applies to any dispute under the insurance contract. Plaintiff, however, has tried to circumvent those binding provisions by taking affirmative actions in *both* this Court and the New York Court. But it cannot. Plaintiff agreed to all of the terms of the Swiss Re insurance contract, including both the arbitration and forum clauses, and they are

binding and enforceable. *See Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 2013-1977 (La. 7/1/14), 148 So. 3d 871, 878 (forum selection clauses are generally enforceable and are not *per se* violative of public policy in Louisiana); *Town of Homer v. United Healthcare of Louisiana, Inc*., No. 41,512 (La. App. 1 Cir. 1/31/07), 948 So.2d 1163, 1167 ("For a forum selection clause to be mandatory, it must clearly establish the parties' intent to make the chosen venue exclusive."); *Waste Mgmt. of Louisiana, LLC v. Jefferson Parish*, 594 Fed.Appx. 820, 821 (5th Cir. 2014); *Magi XXI, Inc. v. Stato Della Città Del Vaticano*, 818 F. Supp. 2d 597, 605 (E.D.N.Y. 2011) (forum selection clause providing that "[a]ny disagreements between [the parties] shall be resolved exclusively in the Sovereign State of Vatican City" was mandatory); *Allianz Glob. Corp. & Specialty v. Chiswick Bridge*, No. 13-CV-7559-RA, 2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014) (forum selection clause providing that all disputes arising out of or in connection with the agreement "shall be referred to the exclusive jurisdiction of the Hong Kong Courts" was mandatory).

Swiss Re correctly filed an action to compel arbitration in the Courts of the State of New York pursuant to the contract terms. The defendants answered and cross claimed. Plaintiffs, however, chose not to abide by the contract terms and instead hurriedly filed this action, all while asking the same New York Court to provide affirmative relief – virtually the same relief requested here. Not so. The New York Action was properly commended under the contract terms, Plaintiff is bound by its agreement to the contract, and the New York Action includes *all* of the parties, applicable policies and coverage issues. This Court should thus enforce the contract terms, deny the Motion, and allow the first filed, more comprehensive New York Action involving the very same issues raised here to proceed as the parties intended and agreed.

**IV.     Plaintiff's Motion Should Be Denied Because The New York Action Is First Filed, Names *All* The Necessary Parties, Including The Foreign Insurers, Is More Comprehensive And Can Provide The Most Complete Relief, And The Present Action Substantially Overlaps With The New York Action.**

In its Motion to Stay, Plaintiff expressly asks this Court to "issue an order staying the Complaint to Compel Arbitration in New York." This Court, respectfully, cannot grant such relief under settled law because the New York Action was first filed, has all of the necessary parties, including the foreign insurers, is the most comprehensive, and can provide the most complete relief for all of the necessary parties. Plaintiff's improper action here also substantially overlaps with the New York Action.

As a threshold matter, the relief Plaintiff asks this Court to grant – staying the proceedings before the New York Court – simply cannot be granted as a matter of law. 28 U.S.C. § 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." That is exactly what Plaintiff asks this Court to do here. While Plaintiff has disingenuously styled its papers as a "Motion to Stay," it is in fact asking this Court to enjoin the New York Court proceedings, which is exactly what 28 U.S.C. § 2283 expressly prohibits. Moreover, none of the exceptions apply here since Congress has not authorized this Court to stay the New York proceedings, this matter is not to protect or effectuate a judgment, and is not necessary to aid this Court's jurisdiction. Indeed, any jurisdictional issues are currently pending on Plaintiff's Moton to Remand, which is not set to be submitted until November 2, 2022.

Furthermore, not only does 28 U.S.C. § 2283 preclude Plaintiff's requested relief here, but it is well-settled that a first filed, prior pending action trumps a second-filed action involving

the same parties and the same relief. *See InforMD, LLC v. DocRX, Inc.*, No. 13-533-JJB-SCR, 2015 WL 13064934 (M.D. La. Aug. 31, 2015) ("Accordingly, "the court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions."); *Marks v. Mackey*, No. 6:14-CV-00441, 2014 WL 3530137, at *5 (W.D. La. July 15, 2014) ("The first-to-file rule holds that '[i]n the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case.'"); *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F.Supp.2d 235 (E.D.N.Y. Oct. 17, 2012) ("The United States Supreme Court has acknowledged that application of the 'first-filed' rule promotes 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation....'"); *Ontel Products, Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150 (S.D.N.Y.1995) (The first-filed rule "enables courts to prevent 'duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue.' Proper application of the 'first-filed' rule requires that the first and subsequently filed case(s) have either identical or substantially similar parties and claims."); *First City Nat'l Bank and Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989) ("The first-filed rule is a well-settled principle in the Second Circuit, establishing that "[w]here there are two competing lawsuits, the first suit should have priority.") (internal quotation marks omitted).

Additionally, a "decision to apply the first-filed rule rests on two questions: '(1) whether the two pending actions are so duplicative that they involve substantially overlapping issues such that one court should decide both, and if so, (2) which of the two courts should take the case.'" *Mackey*, *supra,* 2014 WL 3530137 at *3. "Two cases substantially overlap if they involve 'closely-related questions or common subject matter.' Factors to consider in determining

13

substantial overlap include whether the core issues are the same and the interrelation between the facts, witnesses, and evidence." *Id.* Moreover, "[s]ubstantial overlap has been found when separate lawsuits present the same core facts." *Id.*

There is no dispute that the New York Action is first filed and more comprehensive and complete than Plaintiff's second-filed Louisiana action here. The New York Action was commenced on August 18, 2022. ECF No. 10-4 at 2. The present action was hurriedly filed a week later, on August 25, 2022. ECF No. 1. Further, the defendants in the New York Action have all already joined issue and asserted cross claims against Jefferson Parish School Board on August 19, 2022. And critically, Plaintiff has itself already affirmatively sought relief before the Court in the New York Action by filing a Motion to Dismiss on virtually the same grounds as the Motion to Stay. Ex. B. Indeed, Plaintiff's Motion to Dismiss the New York Action expressly seeks dismissal on the ground that Plaintiff "is immune from suit in New York" pursuant to *Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 185 (2019). That is the *exact* argument Plaintiff asserts on its Motion to Stay here.

There is also no dispute that the New York Action is more comprehensive and complete than the second-filed Louisiana action. To wit, the defendants in the New York action include foreign insurers Certain Underwriters at Lloyd's London ("Underwriters"), whose policies constitute the largest share of the market and against whom Plaintiff has also asserted claims for coverage arising out of the very same loss. Indeed, Underwriters has been actively engaged in this case for some time and have contributed their share of the payment already made to Plaintiff. Further, Plaintiff is still asserting the very same claims against Underwriters as it is asserting against the remaining insurers. Underwriters, however, are *not* named as defendants in the captioned action and that is solely because Plaintiff knows that doing so would eviscerate any

14

chance of remanding the case to state court. As such, because the New York Action is first filed and *does* include Underwriters, it is indisputably more comprehensive and complete. Thus, Plaintiff's Motion to Stay should be denied.

Finally, the New York Action and Plaintiff's improper Louisiana action more than substantially overlap. Both arise out of Plaintiff's claim under the respective insurance contracts for coverage for the alleged damage to Plaintiff's properties due to Hurricane Ida. Both assert the same allegations that (1) Plaintiff paid over $52,323,800 to repair the properties, (2) Plaintiff made an unconditional tender demand of $45 million for the claim, (3) the insurers only paid about $20 million to Plaintiff, and (4) the parties dispute the extent of coverage under the respective policies. Additionally, both actions specifically address the applicability of the arbitration and forum clauses in the pertinent policies.

Plaintiff's second-filed, and less comprehensive, Louisiana action simply cannot be sustained where the New York Action was filed first, contains *all* of the necessary parties, is more complete and comprehensive, and the claims in the second-filed Louisiana action substantially overlap with the first-filed New York Action. Accordingly, Plaintiff's Motion to Stay should be denied.

## V.    Plaintiff Is Wrong That The Arbitration Clause It Agreed To Is Void Under Louisiana Insurance Code Section 868 Because The Statute Does Not Apply To Surplus Lines Policies, And Furthermore The Statute Does Not Apply Where, As Here, The Policy Premium Exceeds $200,000.

Contrary to Plaintiff's contention in its Motion to Stay, La. R.S. § 22:868(A) does not render null and void the arbitration and forum selection clauses in the Swiss Re insurance contract. As a threshold matter, Plaintiff, in its haste to file the Motion to Stay, completely ignores the fact that Section 868 does not apply to surplus insurers like Swiss Re here. Section

868(D) states on its face that the "provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." *See* La. R.S. § 22:868(D).

Here, the Swiss Re insurance contract at issue is surplus lines insurance and, thus, does not require approval by the Department of Insurance. ECF No. 10-4 at 24. That is clear from the very first page of the insurance contract, which unambiguously states, in *red* lettering, that "[t]his insurance policy is delivered as surplus line coverage under the Insurance Code of the State of Louisiana." *Id.* Moreover, the Louisiana Department of Insurance's website confirms that Swiss Re is a surplus lines insurer.[2]

Significantly, the court in *Hotel Management of New Orleans, LLC v. General Star Indemnity Co.*, No. 21-876 (E.D. La. May 12, 2022), 2022 WL 1553575, at *4 ("*Hotel Management*") made it clear that the statute does not apply where the policy at issue is surplus lines insurance. The Court stated: "Because, as even Plaintiff acknowledges, the policy at issue here is an instance of surplus lines insurance, which does not require approval by the Department of Insurance." *Id.* at *4.; *see also L.R.S.* § 22:446. Here, since the Swiss Re insurance contract is surplus lines insurance. As such, Section 868 is inapplicable under *Hotel Management* and warrants denial of Plaintiff's Motion to Stay.

The result in *Hotel Management* is consistent with recent action by the United States Fifth Circuit. The Fifth Circuit, faced with a district court ruling finding that Section 868 rendered a forum selection clause in a property insurance policy issued by a surplus lines carrier unenforceable, recently granted a petition for a writ of mandamus to the Western District of Louisiana, directing it to vacate its Memorandum Order (denying a motion to transfer) and enter

---

[2] *See https://www.ldi.la.gov/onlineservices/ActiveCompanySearch/Results.aspx*

in its place an order transferring the case to the United States District Court for the Southern District of New York. Compare *Ram Krishana, Inc. v. Mt. Hawley Insurance Company*, 21-3031 (W.D. La. 1/27/2022), 2022 WL 266713, with *In Re: Mt. Hawley Insurance Company*, No. 22-30111 (5th Cir. 2022) (Mandate and Writ of Mandamus attached as Ex.C)

In addition, Section 868 does not apply because the Legislature, even if it intended to attempt to regulate the form of insurance contracts of surplus lines insurers in contravention of La. R.S. 22:446, only intended that it apply to policies whose premium are less than $200,000. Importantly, determining the Legislature's intent behind a statute is critical in determining how the statute is to be interpreted. *See Creekstone Juban I, L.L.C. v. XL Ins. America, Inc*., 2018-0748 (La. 5/8/19), 282 So.3d 1042,1046 ("Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent."). "A statute must be applied and interpreted in a manner that is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. In construing legislation, it is presumed that the intention of the legislative branch is to achieve a consistent body of law." *Maw Enterprises, L.L.C. v. City of Marksville*, 2014-0090 (La. 9/3/14), 149 So.3d 210, 218.

Here, the Louisiana legislature did *not* intend for the statute to apply to carriers whose premiums exceed $200,000. To that point, on April 20, 2022, the Louisiana State Senate held a hearing on, among other things, a "clean up bill" or amendment to the statute to clarify whether it applied to surplus lines carriers. During that hearing, Senator Jay Luneau, who sponsored and argued for adoption of the amendment, made clear that the Legislature only intended for La. R.S. Section 22:868 to apply to policies whose premiums are less than $200,000. In his presentation, Senator Luneau, referring to La. R.S. Section 22:868, stated:

There was an amendment put on by Senator Peacock on the floor that basically said it exempted any commercial policy that had a premium of $200,000 or more annually. And that I thought was very clear what we did. We talked about it on the floor, we talked about the particular amendment, however several surplus lines have been arguing in court this last year that all surplus lines carriers are exempt from this clause.[3]

The legislative history and intent behind the statute makes it abundantly clear that small consumer policies are the focus and commercial policies with sophisticated entities with premiums more than $200,000 are exempt from the statute. That is the exact situation here. Here, the Declarations page of the Swiss Re insurance contract shows that the premium is $303,438.00, which far exceeds the $200,000 threshold the that the Louisiana Legislature deemed to be exempt from the statute. As such, because the legislative intent behind La. R.S. § 22:868 is that it does not apply to insurance policies whose premium charge exceeds $200,000, and the premium charge here *is over $100,000 more* than that amount, the statute does *not* apply and the arbitration and forum clauses in the Swiss Re insurance contract are fully enforceable. Accordingly, Plaintiff's Motion to Stay should be denied.

## VI.   Plaintiff Has Waived Any Sovereign Immunity

Plaintiff has waived any sovereign immunity arguments by seeking affirmative relief from this Court. *See, e.g.*, *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 119 S. Ct. 2219, 2226, 144 L. Ed. 2d 605 (1999) ("we will find a waiver either if the State voluntarily invokes our jurisdiction … or else if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction.") (internal citations omitted); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620, 122 S. Ct. 1640, 1644, 152 L. Ed. 2d 806

---

[3] *See* S.B. 484, 2022 Leg. Sess. The video of the legislative session discussing the Legislative History is publicly available on the Louisiana State Senate's website at https://senate.la.gov/s_video/2022/april. The video of the session can be found on the site on the page "April 2022 Archived Video" and is titled "SB Insurance SB 484 By Luneau."

(2002) ("This Court consistently has found a waiver when a [State]… has voluntarily invoked that court's jurisdiction).

Regardless of what the New York Court determines, the Plaintiff cannot now contend that it has a sovereign immunity defense in this Court. Plaintiff has sought affirmative and substantive relief in this Court. First, Plaintiff served the Motion to Stay, seeking an Order staying the arbitration, staying Plaintiff's obligation to appoint an arbitrator, and staying the New York Action. Second, Plaintiff served the Motion to Expedite, seeking the extraordinary relief of an expedited hearing on the Motion to Stay. This Motion was granted by the Court and the Court ordered substantive relief in favor of Plaintiff.

**VII.** **Plaintiff's Efforts To Evade The New York Convention By Not Naming The Foreign Insurers In This Suit Is Of No Avail Pursuant To The Recent Decision From Chief Judge Brown In *Kronlage Family LP v. Independent Specialty Insurance Company*.**

The Fifth Circuit has repeatedly held that removal is proper and subject matter jurisdiction is established where (1) an arbitration agreement "falls under" the Convention and (2) the litigation "relates to" the arbitration agreement. Plaintiff's Motion to Stay fails to address either the "falls under" or "relates to" questions, which are the only relevant questions to be answered. Instead, Plaintiff pursues irrelevant, outdated merits-based arguments regarding the enforceability of the Arbitration Agreement, claiming that the Motion to Stay should be granted because the foreign insurers – who Plaintiff failed to name as defendants here for strategic purposes – have waived arbitration.[4]

---

[4] Although Plaintiff purposefully did not name the foreign insurers as defendants and they therefore cannot defend their interests, Plaintiff's argument that a service of suit provision waives an arbitration agreement has been repeatedly rejected in this District. *See, e.g.*, *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. CV 20-2326, 2020 WL 7342752, at *9 (E.D. La. Dec. 14, 2020) ("The service of suit provision does not negate this

Notwithstanding that the Court cannot adjudicate whether the foreign insurers have waived arbitration because they are not parties to this action, the argument misses the mark. As the Court held in *Kronlage Fam. LP v. Indep. Specialty Ins. Co.*, No. CV 22-1013, 2022 WL 3444011 (E.D. La. Aug. 17, 2022), removal is proper when the "subject matter of an action or proceeding pending in a State court *relates* to an arbitration agreement *falling under* the Convention." *Id.* at *5 (emphasis in original). Following proper removal, an arbitration agreement is fully enforceable and not reverse-preempted by Louisiana Law under the McCarran-Ferguson Act based on the Fifth Circuit's recent decision in *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019), *as revised* (June 6, 2019).

With respect to removal, Section 205 states:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205.

Although the statute does not define "relates to," "federal courts have recognized that the plain and expansive language of the removal statute embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal

_____

Court's jurisdiction as held in the *McDermott* case.") (citing *McDermott Intern., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1204-05 (5th Cir. 1991) (finding it unlikely that Underwriters "would secure an almost infinitely broad arbitration clause and also permit [the plaintiff] to attack it in the court of its choice.")). The Fifth Circuit in *McDermott* also held that the service of suit clause was not an express waiver of Underwriters' removal rights and was intended to work in tandem with the arbitration clause by stating, "the service of suit clause's 'failure to pay a claim' provision could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *Id.* at 1204-05.

treatment of arbitration agreements by cosignatories of the Convention." *Acosta v. Master Maint. And Constr. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006).

**A.     The Arbitration Agreement Falls Under The Convention.**

According to the Fifth Circuit, for an arbitration agreement to fall under the Convention, the removing party must satisfy the following elements:

> (1) there must be an agreement in writing to arbitrate the dispute; (2) the agreement must provide for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate must arise out of a commercial legal relationship; and (4) at least one party to the agreement must not be an American citizen.

*Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 910 (5th Cir. 2019).

The first element is satisfied because there is no dispute that the insurance contract is in writing and contains the Arbitration Agreement. The second element is satisfied because the Arbitration Agreement states that any hearing shall take place in New York. Thus, the Arbitration Agreement provides for arbitration in the United States and the United States is a signatory to the Convention. The third element is satisfied because an insurance contract constitutes a commercial legal relationship. *McDonnel Grp., L.L.C*, 923 F.3d at 432 n.8.

As to the fourth element, Plaintiff confirms that no less than five insurers are foreign nation insurers. *See* ECF No. 10-1 at 1. There is no dispute that the foreign nation insurers are parties to the insurance contract. Intentionally leaving the foreign insurers out of this action to try to get out of application of the Convention does not change this fact. *See 1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. CV 20-2326, 2020 WL 7342752, at *5 (E.D. La. Dec. 14, 2020) ("The mere presence of two domestic parties does not foreclose the 'fall under' analysis. A commercial agreement that involves *at least one party who is not a U.S. citizen* or property located abroad, envisage performance abroad, or have some other reasonable

relationship with one of more foreign states is deemed to fall under the Convention.") (emphasis in original).

Therefore, because all four elements are satisfied based on facts alleged in the Notice of Removal, the arbitration agreement falls under the Convention.

**B.      Plaintiff's Claims Are Related To The Arbitration Agreement.**

According to the Fifth Circuit, "whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' to the plaintiff's suit." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2022). The Fifth Circuit has explicitly instructed district courts not to consider the merits of the arbitration provision on a motion to remand because doing so would improperly "combine the jurisdictional and merits inquiry into a single stage." *Id.* at 671. Thus, this standard is interpreted broadly, such that a defendant can meet this standard in "just about any suit" asserting removal under the Convention Act "[a]s long as the defendant's assertion is not completely absurd or impossible." *Id.* at 669. *See also 1010 Common, LLC*, 2020 WL 7342752, at *6 ("Thus, for removal to be proper, the defendant must merely demonstrate 'a nonfrivolous connection to an international arbitration agreement.'") (citing *OJSC UKRNAFTA v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 495-96 (5th Cir. 2020)).

Here, the "relates to" prong is satisfied because Plaintiff is claiming insurance proceeds and other extra-contractual damages under the insurance contracts, which contain the Arbitration Agreement that will determine "all matters in dispute." Thus, the Arbitration Agreement relates to the litigation because it will determine what rights Plaintiff has to the damages claimed.

As Chief Judge Brown held in *Kronlage*, "given the 'low bar' for removal in Convention cases, and given the presence of an arbitration provision in the Policy that could conceivably

affect the outcome of this case, the dispute relates to the Policy's arbitration provision. Because the arbitration agreement falls under the Convention and the dispute relates to that arbitration agreement, removal under the Convention Act was proper." *Kronlage Fam. LP*, 2022 WL 344011, at *6.

### C.   The Arbitration Agreement Is Not Reverse-Preempted By Louisiana Law Under The McCarran-Ferguson Act.

Any contention that Louisiana law reverse-preempts the Convention has been plainly rejected by the Fifth Circuit in *McDonnell*. There, the appellate court explained that "[t]he McCarran-Ferguson Act permits states to reverse-preempt an otherwise applicable "Act of Congress" by enacting their own regulations of the insurance industry." *McDonnell*, 923 F.3d at 431. However, the Fifth Circuit explained that the McCarran-Ferguson Act does not apply to "a treaty, such as the Convention, which 'remains an international agreement or contract negotiated by the Executive Branch and ratified by the Senate, not by Congress.'" *Id.* at 432 (quoting *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 723 (5th Cir. 2009)). The Fifth Circuit found this principle to apply "whether the treaty is self-executing or requires implementing legislation." *Id.* (citation omitted). Therefore, the Fifth Circuit held that the Convention Act, as the Convention's implementing legislation, preempts state law. *Id.* (citation omitted). Therefore, Louisiana Law is not reverse-preempted by the McCarran Ferguson Act and the insurance contract's Arbitration Agreement is not void under Louisiana law.

## <u>CONCLUSION</u>

Swiss Re respectfully requests that the Court deny the Motion to Stay and grant Swiss Re any such further relief it deems proper.

Dated: September 13, 2022

By:    */s/ James K. Ordeneaux*
        James K. Ordeneaux
        Plauche, Maselli, Parkerson, LLP
        One Shell Square
        701 Poydras Street, Suite 3800
        New Orleans, LA 70139
        Tel. (504) 582-1142
        Email: jordeneaux@pmpllp.com

*Attorneys for Defendant Swiss Re Corporate Solutions Capacity Insurance Corporation, formerly known as First Specialty Insurance Corporation*

Of counsel:

Aidan M. McCormack
Cyril E. Smith
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4500
Fax (212) 335-4501
Email: aidan.mccormack@dlapiper.com
Email: cyril.smith@dlapiper.com

*Attorneys for Defendant Swiss Re Corporate Solutions Capacity Insurance Corporation, formerly known as First Specialty Insurance Corporation*

195848424